UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

KEYBANK NATIONAL ASSOCIATION,   )
   )
   Plaintiff,   )
   )
   v.   )   Case No. 1:21-cv-778
   )
BEAUTY QUEST SKINCARE, LLC, and   )
ABHA SHARMA WADHWA,   )
   )
   Defendants.   )

**ORDER ON MOTION FOR SUMMARY JUDGMENT**
**(Doc. 14)**

KeyBank National Association ("KeyBank") sues Beauty Quest Skincare, LLC ("Beauty Quest") and Abha Sharma Wadhwa alleging two counts of breach of contract and one count of breach of guaranty arising out of Defendants' alleged "default due to a failure to make required payments per the terms and conditions of certain Promissory Notes and a Commercial Guaranty Agreement." (Doc. 1 ¶ 1.) KeyBank moves for summary judgment against Beauty Quest and Ms. Wadhwa. (Doc. 14.)

**Factual Background[1]**

Plaintiff alleges that on or about November 23, 2015, Ms. Wadhwa, as a member of Beauty Quest, executed two Promissory Notes ("Notes") and two Commercial Security Agreements on behalf of Beauty Quest, and executed a Commercial Guaranty Agreement ("Guaranty"). (Doc. 1 ¶¶ 7, 11, 13, 17, 19; Doc. 14-2 ¶¶ 3–5.) The principal amount of the first Note, numbered 11001, was $200,000.00. (Doc. 14-2 ¶ 3.) The principal amount of the second

---

[1] Neither party has filed a statement of facts as required by W.D.N.Y. Loc. R. 56(a). The following allegations are drawn from the Complaint, Mr. Charles Benjamin's Declaration, and from Defendants' submissions in opposition to the motion for summary judgment.

Note, numbered 21001, was $50,000.00. (Doc. 14-2 ¶ 4.) The Guaranty lists Beauty Quest as the borrower, KeyBank as the lender, and Ms. Wadhwa as the Guarantor. (Doc. 14-5.)

Plaintiff alleges that or around November 23, 2016, Beauty Quest defaulted under the terms of the first Note. (Doc. 14-2 ¶ 6.) Plaintiff further alleges that on or around August 1, 2017, Beauty Quest defaulted under the terms of the second Note. (*Id.* ¶ 7.) Based on these agreements, Plaintiff alleges that Wadhwa personally guaranteed both loans, and has breached the Guaranty by failing to pay Beauty Quest's indebtedness upon Beauty Quest's default.

Defendant Wadhwa responds she did not personally guarantee two loans that Beauty Quest undertook in 2015. (Doc. 21-2 at 2.) She further argues that "Key Bank's contention that I personally owe it money for the two loans of the Salon lack merit." (*Id.*) In the alternative, she argues that even if she is found personally liable for Beauty Quest's failure to pay the second Note, she did not guarantee the first Note in the amount of $200,000. (Doc. 19-1 at 4.)

The court previously denied Ms. Wadhwa's motion to dismiss. (*See* Doc. 15.) In that order, the court found that the Complaint contained sufficient factual allegations to plausibly allege a breach of guaranty claim. Since the publication of that order, there have been no discovery or disclosures by either party.

I.    **Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he court must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150

2

(2000). "[T]o show a genuine dispute, the nonmoving party must provide hard evidence, from which a reasonable inference in its favor may be drawn. Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuinely disputed fact." *Hayes v. Dahlke*, 976 F.3d 259, 267–68 (2d Cir. 2020) (cleaned up). Although the court "must disregard all evidence favorable to the moving party that the jury is not required to believe," the court credits "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.*

### Analysis

Plaintiff argues that the court should grant summary judgment in its favor without commencing discovery because there is "competent and incontrovertible documentary evidence supporting all of KeyBank's allegations." (Doc. 14-1 ¶ 11.) Plaintiff argues the documentary evidence filed as exhibits to the motion for summary judgment establish the following: (1) Two valid and enforceable loan agreements exist between KeyBank and Beauty Quest; (2) Ms. Wadhwa personally guaranteed both loan agreements; (3) Beauty Quest defaulted on its loan obligations; and (4) Ms. Wadhwa breached the guaranty by refusing to repay Beauty Quest's debts to KeyBank upon default. (*Id.* ¶ 4.) Taken together, Plaintiff avers that this "incontrovertible documentary evidence" leaves no genuine dispute of any material fact on all three of their claims. (*Id.* ¶ 11.)

In response, Defendants argue that summary judgment is premature because no discovery has occurred, and because there are open questions of fact which preclude summary judgment. (Doc. 19 ¶¶ 8–11.) Defendants seek discovery to establish that Ms. Wadhwa did not personally guarantee either of the loans, or in the alternative, that Ms. Wadhwa's guarantee covered only the $50,000 loan, not the second loan in the amount of $200,000 which she alleges was secured by

the assets of the Beauty Quest salon. (Doc. 21 at 2.) Both Defendants assert the defense of modification and supplementation of guaranty through the parties' course of performance or by subsequent agreement or course of conduct. (Doc. 9 ¶¶ 5–7; Doc. 17 ¶¶ 5–7.)

Defendants further argue that KeyBank's motion for summary judgment prior to Ms. Wadhwa's opportunity to serve an Answer was a "pre-joinder motion for summary judgment" procedurally barred by N.Y. C.P.L.R. § 3212(a). (Doc. 19-1 at 3.)

The court begins by noting deficiencies in Plaintiff's motion for summary judgment under the Western District of New York local rules, and then addresses the governing law in New York State regarding contract enforcement and defenses.

## I.   Western District of New York Local Rule 56

W.D.N.Y. Local Rule 56 requires that any party moving for summary judgment must attach "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Each such statement must be followed by a citation to admissible evidence as required by Fed. R. Civ. P. 56(c)(1)(A)." W.D.N.Y. L. R. 56(a)(1). Failure to include a statement of facts "may constitute grounds for denial of the motion." *Id*. The nonmoving party, in their papers opposing the motion for summary judgment, must also include a response to each numbered paragraph of the moving party's statement of facts. W.D.N.Y. L. R. 56(a)(2). It is within the district court's discretion to excuse non-compliance with local rules. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000).

Plaintiff's motion for summary judgment did not annex a statement of facts, and so the motion does not comply with the local rules. Instead, Plaintiff relies upon attorney affidavits and attached exhibits as factual support. Although "it is well established that an attorney's affidavit

4

can be used, in connection with a summary judgment motion, to place documents produced in discovery before the Court," *Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016), "[a]n attorney's affidavit or declaration not based on personal knowledge carries no weight." *Fed. Trade Comm'n v. Vantage Point Servs., LLC*, 266 F. Supp. 3d 648, 654 (W.D.N.Y. 2017).

Nevertheless, Plaintiffs have provided authenticated copies of the relevant promissory note documentation and the declaration of KeyBank Loan Workout Relationship Manager Charles Benjamin to verify the underlying debt and the nature of the transaction. The court will exercise its discretion to excuse both parties non-compliance with Local Rule 56(a).

## II.   N.Y. C.P.L.R. § 3212(a)

Defendants argue that KeyBank's decision to move for summary judgment prior to Ms. Wadhwa's service of an Answer renders their motion premature because issue had not been joined at the time of the motion. (Doc. 19-1 at 3 (citing N.Y. C.P.L.R. § 3212(a)).) New York state law permits a party to move for summary judgment only "after issue has been joined," provided that the motion is not filed earlier than 30 days, or later than 120 days, after the filing of the note of issue. N.Y. C.P.L.R. § 3212(a). Recognizing that no court in the Second Circuit has imposed a similar timing bar for a motion under Rule 56, Defendants nevertheless ask the court to apply New York State's rule limiting when a party may move for summary judgment. Plaintiff responds that even if the court applied New York state law, the issue is now moot because Ms. Wadhwa has since filed an answer and therefore issue is joined and ripe for adjudication. (Doc. 20 at 2.)

A federal court sitting in diversity applies state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The Second Circuit recognizes that the

summary judgment standard is procedural, and so the federal procedural rule—*i.e.*, Rule 56—applies in federal court. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118 (2d Cir. 2005) ("New York state procedural rules do not apply here to a federal court sitting in diversity"); *All Am. Tel. Co., Inc. v. AT & T Corp.*, 328 F. Supp. 3d 342, 354 (S.D.N.Y. 2018) ("C.P.L.R. § 3212 and the New York case authority interpreting and applying that standard do not apply."). The court will not deny Plaintiff's motion because its filing did not comply with New York procedural law.

## III.   Breach of Contract Claims Against Beauty Quest (Counts I, II)

Plaintiff brings two breach of contract claims against Beauty Quest. Plaintiff alleges that KeyBank entered into two valid and enforceable contracts with Beauty Quest. (Doc. 1 ¶¶ 26–35.) Plaintiff further alleges that KeyBank performed all of its obligations pursuant to each contract, and that Beauty Quest breached its contractual obligations by failing to make the agreed upon payments. (*Id.*) As a result, KeyBank alleges that Beauty Quest breached both contracts. (*Id.*) KeyBank seeks damages in the amount of $251,603.13 plus interest, attorneys' fees and costs for the first Note and damages in the amount of $58,555.61 plus interest, attorneys' fees and costs for the second Note. (Doc. 1 ¶¶ 30, 35.)

Defendants do not seek any discovery concerning the validity of the Notes or Beauty Quest's performance. Rather, Defendants focus on the scope of Defendant Wadhwa's personal guaranty of the two Notes, arguing that she did not personally guarantee the contracts and is therefore not personally liable for repayment. (Doc. 19-1 at 3–4.) Defendant Beauty Quest also asserts the affirmative defense of modification. (Doc. 9 at 2.)

### A.   Elements of Breach of Contract

Under New York state substantive law, the essential elements of breach of contract are "the existence of a contract, the plaintiff's performance under the contract, the defendant's

breach of that contract, and resulting damages." *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 893

N.Y.S.2d 237, 239 (N.Y. App. Div. 2010). Uncontested documentary evidence alone can support

a claim for breach of contract. *See, e.g., Dean Builders Grp., P.C. v. M.B. Din Constr., Inc.*, 131

N.Y.S.3d 664, 667–668 (N.Y. App. Div. 2020) (submission of contract and related documents

showing mutual assent, performance, breach, and damages are sufficient to support breach of

contract claim at summary judgment).

Section 2-202 of the Uniform Commercial Code ("UCC") provides that contracts

intended as complete and exclusive statements of the terms of the agreement may not be

supplemented or contradicted by prior or contemporaneous oral agreements. U.C.C. § 2-202

(1977); 1 White, Summers & Hillman, Uniform Commercial Code § 3:13 (6th ed. 2021). Under

New York law, "[a] contract may be enforced summarily where its terms are unambiguous."

*Vitullo v. N.Y. Cent. Mut. Fire Ins. Co.*, 148 A.D.3d 1773, 1774 (N.Y. App. Div. 2017) (internal

citation omitted). "Whether a contract is ambiguous is a question of law[,] and extrinsic evidence

may not be considered unless the document itself is ambiguous." *S. Rd. Assoc., LLC v. Int'l Bus.

Machs. Corp.*, 4 N.Y.3d 272, 278 (N.Y. 2005). It is well settled that "extrinsic and parol

evidence is not admissible to create an ambiguity in a written agreement which is complete and

clear and unambiguous upon its face." *Intercont'l Plan., Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372,

379 (N.Y. 1969).

On November 23, 2015, Ms. Wadhwa signed two commercial security agreements and

two Notes. (Docs. 1-3, 1-5, 14-3, 14-4.) The Note for loan number 11001 with a principal

amount of $200,000 is signed by Ms. Wadhwa in her capacity as a "Member of Beauty Quest

Skincare, L.L.C." (Doc. 14-3 at 3.) Note 11001 indicates that in signing, the signor has read and

understood all the provisions of the note and agrees to the terms of the note. (*Id.*) The Note for

loan number 21001 is identical in all respects, except that Note 21001 omits the "Default" section and includes sections titled "Annual Administrative Fee", "Demand Line of Credit", "Card Access", and "Check Access." (Doc. 14-4.) Ms. Wadhwa signed one commercial security agreement for each of the loans. (Docs. 1-3, 1-5.) The commercial security agreements are identical, except that "Default" is defined differently for each loan. (*Id.*)

This documentary evidence establishes that KeyBank entered into two contracts with Beauty Quest. Plaintiff performed under the contracts by making payments to Beauty Quest. Plaintiff has further submitted evidence in the form of a sworn affidavit establishing that Beauty Quest defaulted on its monthly payments. (Doc. 14-2 ¶¶ 6–7.) This default has resulted in damages totaling approximately $310,158,74. (*Id.* at ¶ 9(c).) Based on the foregoing, Plaintiff has established the elements of breach of contract under New York law.

### B.   Beauty Quest's Defenses

Beauty Quest asserts the defense of modification. (Doc. 9 ¶¶ 5–6.)

The Notes contain express provisions that any modification releasing signatories from liability must be in writing to be enforceable. (Doc. 14-3 at 2; Doc. 14-4 at 2 ("Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.").) New York State recognizes and regularly enforces contractual provisions that require modification to be in writing to be enforced. *Carlin v. Jemal*, 891 N.Y.S.2d 391, 392 (N.Y. App. Div. 2009) (citing N.Y. Gen. Oblig. § 15-301.) Beauty Quest has not indicated that any such written modification releasing Beauty Quest from liability exists or could be found in discovery.

Even if the express terms of the Note did not prohibit the admission of oral negotiations or other evidence of subjective intent, New York law prohibits the admission of extrinsic evidence unless the terms of the contract are ambiguous. *S. Rd. Assoc., LLC*, 4 N.Y.3d at 278; 81 N.Y. Jur. 2d Negotiable Instruments, Etc. § 712. The only ambiguity Plaintiff has identified relates to the scope of the Commercial Guaranty. Plaintiff has not argued that the text of the Notes or the Commercial Security Agreements are themselves ambiguous. Absent any ambiguity, the parole evidence rule bars the introduction of verbal or other modifications that would affect Beauty Quest's liability on the Notes.

Plaintiff has established through documentary evidence that there is no genuine dispute as to any of the elements of breach of contract under New York law. The only reasonable inferences the court can draw in favor of Defendants relate to extrinsic communications and subjective beliefs. This evidence would be barred by Article 3 of the New York UCC, New York's parole evidence rule, and the terms of the Notes themselves. Drawing all reasonable inferences in Beauty Quest's favor, Beauty Quest has not disputed any element of breach of contract, nor has Beauty Quest alleged any facts that would support a colorable defense under New York state law. Summary judgment in favor of Plaintiff is appropriate on Count I and Count II for breach of contract against Beauty Quest.

## IV.    Breach of Guaranty Against Ms. Wadhwa (Count III)

Plaintiff argues that Ms. Wadhwa personally guaranteed both Notes, and that by failing to make payments on the Notes after Beauty Quest's default, Ms. Wadhwa breached her guaranty by failing to repay Beauty Quest's indebtedness. (Doc. 14-1 ¶ 4.) Plaintiff further argues it has met its burden of proof as to each of the elements of the claim for breach of guaranty by

submitting "competent and incontrovertible documentary evidence" of the underlying contracts. (*Id.* ¶ 11.)

Ms. Wadhwa asserts the defenses of lack of consideration and modification and supplementation by the parties' course of performance or by subsequent agreement or course of conduct. (Doc. 17 ¶¶ 7, 10.) In her response to the motion for summary judgment, Ms. Wadhwa argues that summary judgment is premature because questions of fact preclude summary judgment. (Doc. 19 ¶¶ 9–11.) The court construes this argument as a request to defer or deny the motion under Fed. R. Civ. P. 56(d).

The question of whether Ms. Wadhwa has met the requirements of Rule 56(d) relates to her asserted defenses. If the facts Ms. Wadhwa requests the opportunity to develop through discovery would assist her in proving her defenses, then summary judgment is premature and the court should permit discovery. If, however, the discovery Ms. Wadhwa seeks would be irrelevant, inadmissible, or would not aid her in developing her defenses, then such discovery cannot be reasonably expected to raise a genuine issue of material fact and should be denied.

Under Rule 56(d), if a party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d)[2]; *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989). A party seeking additional discovery under Rule 56(d) must file an affidavit in support of

---

[2] Prior to the 2010 amendments to the Federal Rules of Civil Procedure, the substance of Rule 56(d) was contained in subsection (f) of Rule 56. Courts in the Second Circuit continue to apply Rule 56(f) jurisprudence to Rule 56(d) inquiries. *See Gene Codes Forensics, Inc. v. City of New York*, 812 F. Supp. 2d 295, 304 n.8 (S.D.N.Y. 2011).

its request for discovery describing: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Shaheen v. Naughton*, 222 F. App'x 11, 13 (2d Cir. 2007) (citing *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004)). Rule 56(d) does not permit "fishing expeditions" to fill material evidentiary gaps in a case. *Contemp. Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981). Rather, "[l]itigants seeking relief under the rule must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative." *Sundsvallsbanken v. Fondmetal, Inc.*, 624 F. Supp. 811, 815 (S.D.N.Y. 1985).

Ms. Wadhwa has filed an affidavit in support of her request for additional discovery. (Doc. 21-2.) In this affidavit, Ms. Wadhwa states that the "loans that are the subject of this lawsuit were not personal loans to me." (*Id.* ¶ 7.) She seeks discovery on this point, as well as to her argument that Note 11001 for $200,000 "was to be secured by the assets of the Salon." (*Id.* ¶ 13.) Ms. Wadhwa further states that the two Notes were "separate loans that were issued for two separate reasons." (Doc. 21-2 ¶ 20.) To support this claim, Ms. Wadhwa seeks loan documentation and the opportunity to "question Key Bank's loan officer with regard to their contentions as to why Key Bank believes that I [am] personally liable for a $200,000 secured loan made to the Beauty Quest business." (*Id.* ¶ 21.) Ms. Wadhwa explains that she has not yet had the opportunity to obtain this information. (*Id.*) Ms. Wadhwa's counsel echoes this explanation, stating that there has been no opportunity to clarify these facts because discovery has not begun. (Doc. 19 ¶¶ 8–11.)

In response, Plaintiff argues that Defendant Wadhwa "attempts to re-argue the issue of her commercial guaranty, which is the same argument on which she lost on her motion to

dismiss." (Doc. 20 at 2.) The court construes this argument as reiterating the issue of whether the Commercial Guaranty is ambiguous. In the order denying Ms. Wadhwa's motion to dismiss, the court concluded that Ms. Wadhwa signed the Commercial Guarantee, and in so doing agreed to guarantee the payment of Beauty Quest's indebtedness "now existing or hereafter arising or acquired." (Doc. 15 at 5 (citing Doc. 1-6).)

In order to determine whether Ms. Wadhwa is entitled to discovery on her proffered defenses, the court must first determine whether the underlying contract contains sufficient ambiguity to permit the introduction of extrinsic evidence. If the commercial guarantee agreement does not contain any ambiguity, then even if Ms. Wadhwa's affidavit complies with the requirements of Rule 56(d), the discovery she seeks—and the defenses she asserts—would not be reasonably expected to raise a genuine issue of material fact and must be denied.

New York State law, incorporating the Uniform Commercial Code, provides that a contract "intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of contemporaneous oral agreement." N.Y. UCC § 2-202 (McKinney 2021). The parol evidence rule has two prongs:

> The first excludes admission and consideration of extrinsic evidence concerning the meaning of provisions of a written agreement or instrument if the meaning is complete, clear, and unambiguous on the face of the writing within its four corners. The second prong of the rule excludes admission and consideration of extrinsic evidence to create an ambiguity in a writing which is otherwise clear, complete, and unambiguous on the face of the writing within its four corners.

§ 50:0, The parol evidence rule, 4A N.Y. Prac. Comm. Litig. in N.Y. State Courts § 50:9 (5th ed. 2021).

Under the first prong of the parol evidence rule, a written instrument is ambiguous as a matter of law when "the agreement on its face is reasonably susceptible of more than one

interpretation." *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 573 (N.Y. 1986). When determining whether a contract is ambiguous, the court may not consider extrinsic evidence, but must consider only the four corners of the contract. *S. Rd. Assoc., LLC*, 4 N.Y.3d at 278. Only once the court finds ambiguity in the text of the contract may the court consider extrinsic evidence. The second prong of the parol evidence rule prohibits the consideration of extrinsic evidence to introduce an ambiguity into an otherwise unambiguous contract. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163 (N.Y. 1990).

With this background in mind, the court considers whether the commercial guaranty agreement is ambiguous.

The Commercial Guaranty lists Beauty Quest as the borrower, KeyBank as the lender, and Ms. Wadhwa as the Guarantor. (Doc. 14-5.) The Commercial Guaranty is signed by Ms. Wadhwa. (*Id.* at 5.) The Commercial Guaranty states that "Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender" and that it is a "continuing guaranty." (*Id.* at 2.) The agreement defines "Indebtedness" in pertinent part as

> all of the principal amount outstanding . . ., accrued unpaid interest thereon, and all collection costs and legal expenses . . . arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeable with others, owes or will owe Lender.

(*Id.* at 2.) Pages 2–4 of the Commercial Guaranty indicate "Loan No: 21001." (*Id.* at 3–5.) A box for "Loan No" on the first page is blank or blanked out but is followed by a statement that "[r]eferences in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item." (*Id.* at 2.)

The court has already concluded that the Commercial Guaranty Ms. Wadhwa signed is a continuing guarantee. (Doc. 15 at 3–4.) Unlike a "specific guaranty," which covers a "single debt

or obligation," a continuing guaranty "governs a course of dealing for an indefinite time or by a succession of credits." *Guaranty*, Black's Law Dictionary (11th ed. 2019). The Guaranty unambiguously states that Ms. Wadhwa, as guarantor, unconditionally guarantees payment of indebtedness, defined as "all debts . . . now existing or hereafter arising or acquired," that Beauty Quest, as borrower, owes or will owe KeyBank. (Doc. 14-5 at 2.) This definition of indebtedness unambiguously includes both the first and second Notes as either of these loans would be debts then existing or thereafter acquired by Beauty Quest.

The presence of "Loan No: 21001" on the corner of pages 2 through 4 of the Guaranty does not defeat the unambiguous definition of indebtedness. "Where there is an inconsistency between a specific provision and a general provision of a contract, the specific provision controls." *Aguirre v. City of New York*, 214 A.D.2d 692, 693 (N.Y. App. Div. 1995). And when a contract defines its own terms, courts will enforce the meaning of those definitions, unless those definitions are themselves ambiguous. *Innophos, Inc. v. Rhodia, S.A.*, 38 A.D.3d 368, 370 (N.Y. App. Div. 2007). Concluding, as Defendants argue, that the text "21001" on pages 2–4 overrides the definition of "indebtedness" would render the language in that definition superfluous. Further, the detailed and specific definition of "indebtedness" controls over the "general" marking of "21001" on the document.

If the Guaranty was signed in conjunction with Note 21001 as she alleges, Ms. Wadhwa would still be liable for the debt on both Notes. If Ms. Wadhwa signed the Notes on behalf of Beauty Quest prior to signing the Guaranty, the Notes were "debts now existing," and thus covered by the Guaranty. If she signed the Notes after signing the Guaranty, they were Beauty Quest's debts "hereafter arising or acquired," and thus also covered by the Guaranty. In either case, the plain language of the Guaranty requires Ms. Wadhwa to pay Beauty Quest's debts

"then existing or hereafter arising" in the case of default. The Guaranty leaves no ambiguity as to the scope of Beauty Quest's debts. Whether the Guaranty lists the number of the first or second Note on pages 2–4 is irrelevant to the issue of Ms. Wadhwa's liability.

In her Rule 56(d) affidavit, Ms. Wadhwa states that the two loans "were separately documented and arose for very different funding reasons." (Doc. 21-2 ¶ 10.) She states further that "[t]he Key Bank loan officer explained the loan documents to me at the time that Beauty Quest undertook the lending," and that she "never agreed to guarantee Promissory Note 11001, which was for $200,000, and was to be secured by the assets of the Salon." (*Id.* ¶¶ 12–13.)

But the loan offer's verbal explanation is exactly the kind of extrinsic evidence that New York courts have repeatedly rejected. *See Shah v. E. Silk Indus., Ltd.*, 112 A.D.2d 870, 871 (N.Y. App. Div. 1985), *aff'd*, 67 N.Y.2d 632 (N.Y. 1986); *see also La Marca v. Kissell*, 702 N.Y.S.2d 490, 491 (N.Y. App. Div. 2000). Finding no ambiguity in the terms of the Notes or the Guaranty, the court concludes that the information Ms. Wadhwa requests would be barred under New York's parol evidence rule and would not aid her in developing a genuine dispute of material fact or developing her defenses of lack of consideration or modification.

Even if the discovery Ms. Wadhwa seeks would not be barred by the parol evidence rule, her modification defense would be unavailing. The Guarantee expressly requires any alteration to be undertaken in writing and signed by both parties. (Doc. 14-5 at 3 ("No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.").) As already discussed, New York State courts regularly enforce similar provisions requiring contractual modifications to be undertaken in writing. *Carlin*, 891 N.Y.S.2d at 392; N.Y. Gen. Oblig. § 15-301. Ms. Wadhwa does not argue that any signed, written modification to the Guaranty exists. Even if

New York State jurisprudence permitted the introduction of contemporaneous negotiations and oral statements by Ms. Wadhwa or the KeyBank loan officer, the terms of the Guaranty would render any such modification non-binding on the parties.

Having found that Ms. Wadhwa's proffered defenses are unavailing, and that the discovery she requests under Rule 56(d) is therefore barred by the parol evidence rule, the court will deny Ms. Wadhwa's request for discovery. The court turns to whether KeyBank has plead each of the elements of breach of guaranty under New York State law.

"On a motion for summary judgment to enforce a written guaranty, all that the creditor need prove is an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty." *4 USS LLC v. DSW MS LLC*, 992 N.Y.S.2d 515, 517 (N.Y. App. Div. 2014) (citing *City of New York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 71 (N.Y. App. Div. 1998)). KeyBank submitted the Commercial Guaranty Agreement, signed by Ms. Wadhwa, and authenticated by KeyBank Loan Workout Relationship Manager Charles Benjamin. (Docs. 14-2, 14-5.) This satisfies the element of an absolute and unconditional guaranty. Mr. Benjamin's affidavit also establishes the underlying debt of $310,158.74. (Docs. 14-5 ¶¶ 9–12.) This affidavit is sufficient to satisfy the requirement of proving the underlying debt. And Ms. Wadhwa breached her obligation to guarantee the debt by refusing to make payments upon Beauty Quest's default. (*See* Doc. 14-2 ¶¶ 9–10.)

For these reasons, the court will grant summary judgment for KeyBank on Count III.

## <u>Conclusion</u>

Plaintiff KeyBank's Motion for Summary Judgment (Doc. 14) is GRANTED.

Dated this 11th day of May, 2022.

Geoffrey W. Crawford, Judge
United States District Court